UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLI INTERACTIVE, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>DIAMOND PHIL'S, LLC, *et al.*,<br><br>        Defendants. | Civil Action No. 2:22-cv-01602-JXN-CLW<br><br>OPINION |

**CATHY L. WALDOR, U.S.M.J.**

**I.**   **Introduction**

This matter is before the Court on the motion of plaintiff CLI INTERACTIVE, LLC ("CLI") seeking leave to file a second amended complaint (ECF No. 10). The motion is fully briefed and has been referred to the undersigned by the Honorable Julien X. Neals. The Court has carefully considered the parties' submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. For the reasons stated below, CLI's motion is **GRANTED IN PART AND DENIED IN PART**.

**II.**   **Background**

CLI brought this action in New Jersey Superior Court; defendants Diamond Phil's, LLC d/b/a Amore Fine Jewelry and Amore Jewelry Design and Phillip Grosso ("Defendants") removed the case to this Court. *See* ECF No. 1. CLI's proposed second amended complaint[1] (the "PSAC," ECF No. 1-1), alleges as follows.

CLI is

> an internet and social media branding, marketing and advertising
> company engaged in the business of promoting Diamond Phil's

---

[1] CLI amended its complaint as of right before removal.

> [jewelry] products and services under the brand name "Amore Jewelry Design" on CLI's wholly owned Facebook.com shops pages, Instagram.com shops pages, Twitter.com shops pages, Amazon.com site, and its wholly owned websites such as Amore Jewelry Design.com, Google My Business.com website, GoogleShopping.com, virtual store, and YouTube.com.

PSAC at ¶ 7 (cleaned up). To promote Diamond Phil's products and services, CLI "create[ed] the brand name 'Amore Jewelry Design' . . . [and] original and unique branding [and] marketing concepts," as well as "implemented proprietary search engine optimization techniques" on its social media pages and websites. These sites contain "Confidential Information that CLI owns, which constitute intellectual property, and which constitute trade secrets". *Id.* a ¶¶ 8-10 (cleaned up).

The parties' relationship was governed by a written agreement (the "Agreement") by which they "agree[d] to form a partnership for the purpose of promoting and selling jewelry to the general public." Under the Agreement, CLI was to provide "all aspects of strategic advertising and marketing plans for the online store and the design and development of deliverables" consisting of online and direct mail marketing of an online jewelry store. In exchange, CLI was to receive a percentage of Defendants' jewelry sales. The Agreement provides that "CLI reserves all rights to all advertising and marketing intellectual properties including design, art creation, programming user interface and strategies throughout and continuing beyond the term of th[e] agreement." *See id.* at ¶¶ 15-20 and Ex. 1.

As alleged, in December 2021, Defendants suddenly terminated the Agreement[2] "and announced [their] intention to become direct competitors with CLI." They created a logo for "Amore Fine Jewelry" that was identical to the "Amore Jewelry Design" logo that CLI crafted for Defendants, and "accessed CLI's Facebook shops account and successfully changed CLI's

---

[2] The Agreement allows termination upon ninety days' notice. *See* PSAC, Ex. 1.

Facebook page logo to 'Amore Fine Jewelry' and changed CLI's admin. identity and password from customer assistance@amorejewelrydesign.com to" Defendants' credentials. This resulted in CLI "being locked out of its Facebook.com shops page account and all views, i.e., all traffic from December 28, 2021 onward, being redirected from CLI to 'Amore Fine Jewelry' at Phillip Grosso's email address". Similar steps were taken as to CLI's other social media pages and business website. As a result of these alleged actions, "all [CLI website] views and traffic and communications from viewers from December 28, 2021 onward, are being forwarded to 'Diamond Phil's' and Phillip Grosso's email address and no viewers are able to contact CLI from the website". Moreover, CLI's "access to its own social media pages and internet websites has been rendered impossible . . . , requiring CLI to start rebuilding its (previous) extensive network f[rom] scratch." *See id.* at ¶¶ 29-52 (cleaned up).

CLI's original (amended) complaint sounds in breach of contract, copyright infringement, and tortious interference with prospective economic advantage.[3] CLI now seeks leave to file a second amended complaint (i) bringing claims for misappropriation of trade secrets; conversion; and intentional interference with prospective economic advantage; (ii) clarifying its breach of contract claim; (iii) adding facts relating to Defendants' alleged access and use of CLI's information and property; and (iv) demanding expanded injunctive relief and other forms of damages. Defendants oppose on futility grounds the proposed amendments relating to the trade secrets, conversion, and intentional interference claims, as well as CLI's request for injunctive relief.[4]

---

[3] While the instant motion was pending, the District Court dismissed the copyright infringement claim with prejudice. *See* ECF No. 20, 21. That dismissal does not impact this motion.

[4] As Defendants do not oppose CLI's proposed amendments to the factual background and breach of contract claim, the Court will permit those amendments.

3

### III.     Legal Standard

As CLI's motion is timely under the Court's scheduling order, ECF No. 7 at ¶ 3, it is governed by FED. R. CIV. P. 15(a)(2), under which "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The "three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend [are] when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016) (quoting *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014)).

"A court denies a motion to amend on futility grounds if the complaint, as amended, would fail to state a claim upon which relief could be granted. We assess futility with the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 168 (3d Cir. 2013) (citations and quotation marks omitted). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quotation marks omitted)). In conducting this analysis, a court must "accept as true all of the factual allegations, as well as all reasonable inferences, reasonably drawn from the complaint, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing cases).

IV.  **Discussion**

   a. **Misappropriation of Trade Secrets**

The PSAC's trade secrets claim proceeds under the New Jersey Trade Secrets Act, N.J.S.A. §§ 56:15-1, *et seq.* (the "NJTSA"). NJTSA claims "require claimants to demonstrate (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." *Par Pharm., Inc. v. Quva Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019) (citing, *e.g.*, N.J.S.A. § 56:15-2).

Defendants primarily object to the proposed claim on the grounds that the PSAC fails to identify the trade secrets at issue, and that those items identified in the PSAC do not qualify as trade secrets. In response, CLI points to the PSAC's reference to "admin. identity and password; original and unique branding, marketing concepts, art creations, images, photos, videos, educational content; proprietary optimization techniques and data." *See* PSAC at ¶ 10.

The bulk of these items fall short of constituting trade secrets. To sufficiently allege a trade secrets claim, a plaintiff must offer "a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets". *IQVIA, Inc. v. Veeva Sys.*, 2022 U.S. Dist. LEXIS 233058, at *49 (D.N.J. Dec. 29, 2022) (**Neals, J.**) (quoting *Givaudan Fragrances Corp. v. Krivda*, 2013 U.S. Dist. LEXIS 169585, at *7-8 (D.N.J. Dec. 2, 2013)). In this regard,

> [i]t is simply not enough for a plaintiff to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets. [A] list of general categories and types of information they allege

> comprise their trade secrets is not enough to identify the trade secrets at issue with the particularity necessary for Defendant to identify the information which Plaintiffs claim was misappropriated because they are too general to specify the trade secrets at issue.

*Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 n.24 (3d Cir. 2021) (quoting *UTStarcom, Inc. v. Starent Networks, Corp.*, 675 F. Supp. 2d 854, 875 (N.D. Ill. 2009) and *Dura Glob. Techs., Inc. v. Magna Donnelly, Corp.*, 2007 U.S. Dist. LEXIS 89650, at *11-12 (E.D. Mich. Dec. 6, 2007)) (cleaned up).

Here, CLI's allusions to its "original and unique branding, marketing concepts,[5] art creations, images, photos,[6] videos, educational content; proprietary optimization techniques and data" are exemplars of "broad areas of technology" and a "list of general categories and types of information . . . allege[dly] compris[ing] trade secrets", and thus, as noted, are patently insufficient to sustain a NJTSA claim. *See Mallet*, *supra*; *e.g., Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*, 2020 U.S. Dist. LEXIS 113688, at *7-8 (D. Del. June 29, 2020) (dismissing complaint for failure to adequately describe trade secrets where "the complaint recites broad categories of information [such as] . . . product specifications, product forecasts, definitions, designs, research and development, [and] patentable technologies"); *Medafor, Inc. v. Starch Med. Inc.*, 2009 U.S. Dist. LEXIS 61345, at *3-4 (D. Minn. July 16, 2009) (trade secrets claim dismissed for failure "to inform [defendant] of the basic fact of what exactly it is supposed

---

[5] CLI's claimed "marketing concepts" also fall short of constituting trade secrets since "the definition of trade secret does not include a marketing concept". *Johnson v. Benjamin Moore & Co.*, 347 N.J. Super. 71, 96 (Super. Ct. App. Div. 2002) (citing authorities).

[6] While CLI's reference to "art creations, images, [and] photos" may be traceable to its allegation that Defendants copied its "Amore Jewelry Design" logo, this is far from made clear in this proposed claim (indeed, the logo is referenced only once, in passing, here), and in any event, the logo would appear to fall outside the legal definition of a trade secret, since CLI has not "taken reasonable measures to keep [it] secret". *See Par Pharm., Inc.*, *supra*. And to the extent CLI would argue that the logo's value lies in the processes underlying its creation (as discussed *infra*), such processes are not adequately described in the PSAC.

to have stolen or unlawfully obtained" where "[t]he complaint describe[d] the trade secrets at issue as 'business methodologies, formulas, devices, and compilations of information, including suppliers and customers'"). As in these cases, CLI's boilerplate recitation of categories of purported trade secrets cannot sustain its proposed claim.

As noted, though, this does not render the proposed claim entirely futile. Instead, the claim may proceed on the strength of Defendants' alleged misappropriation of CLI's login information; *i.e.*, its "admin. identity and password"; information of the sort to have been deemed sufficient to support a trade secrets misappropriation claim. *See, e.g.*, *PhoneDog v. Kravitz*, 2011 U.S. Dist. LEXIS 129229, at *19-20 (N.D. Cal. Nov. 8, 2011) (allegation of stolen Twitter password permitted survival of trade secrets claim); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 U.S. Dist. LEXIS 60260, at *9-12 (N.D. Cal. June 8, 2010) (login and password information constituted trade secrets). While these matters are not binding upon the Court, they find recent support (albeit passing) from the Third Circuit itself, which upheld "the jury's finding that [an allegedly misappropriated] database ID and password constituted a trade secret"). *See Estate of Accurso v. Infra-Red Servs.*, 805 F. App'x 95, 106 (3d Cir. 2020). The Court therefore deems CLI's proposed trade secrets claim as sufficiently pled insofar as it alleges misappropriation of CLI's login information.

The claim is viable in another manner as well. As CLI states in its reply, even if it fails to sufficiently allege misappropriation of trade secrets, its claim may sound in misappropriation of "confidential information." New Jersey law expressly recognizes such a cause of action. *See Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 300 (2001) (concurring with "[o]ther jurisdictions [that] have held that information not technically meeting the strict requirements of trade secrets may be protected as 'confidential information' and may serve as the basis for a tort

action"); *see also Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 F. App'x 754, 758 (3d Cir. 2009) (referencing *Lamorte Burns*' discussion of "the tort of misappropriation of confidential information"). The standard for pleading such a claim is decidedly lower than that governing trade secrets. As explained in *Thomas & Betts*, courts assessing these claims

> should consider whether the allegedly misappropriated information was provided to [a defendant] by [a plaintiff] in the course of his employment[7] for the sole purpose of furthering [the plaintiff's] business interests. To answer that question, the Court should consider the following factors: (1) whether the information was generally available to the public; (2) whether [defendant] would have been aware of the information if not for his employment with [plaintiff]; (3) whether the information gave [defendant] . . . a competitive advantage vis-a-vis [plaintiff]; and (4) whether [defendant] knew that [plaintiff] had an interest in protecting the information to preserve its own competitive advantage. This inquiry does not entail a rigorous examination of the information sought to be protected, as in trade secret law, but rather a focus on the relationship between employer and employee, the expectations of the parties, and the intended use of the information. Moreover, it appears to us that, unlike in trade secret law, these four factors are not to be treated as essential elements of a cause of action for the misappropriation of confidential information.

342 F. App'x at 759-60 (cleaned up; discussing *Lamonte Burns*, 167 N.J. at 300-01).

Under this framework, CLI has adequately pled a claim for misappropriation of confidential information. Information such as CLI's "art creations," "educational content," and the like — even if too broadly stated to constitute trade secrets — would appear to fall under the umbrella of "allegedly misappropriated information . . . provided to [Defendants] by [CLI] . . . for the sole purpose of furthering [CLI's] business interests". Application of the four *Thomas &*

---

[7] Misappropriation of confidential information most commonly arises in the employment context. However, the Court sees no reason to cabin it there. Indeed, *Lamorte Burns* "drew heavily on principles of agency law, which provide that an agent has a duty to the principal 'not to use or to communicate information confidentially given him by the principal . . . in competition with or to the injury of the principal.'" *Thomas & Betts*, 342 F. App'x at 759 (quoting *Lamonte Burns*, 167 N.J. at 300-01). Such principles would appear to animate the instant parties' dealings just the same as if theirs was an employment relationship.

*Betts* factors likewise supports this conclusion, as does the court's missive to "focus on the relationship between employer and employee, the expectations of the parties, and the intended use of the information". *See id.*; *e.g.*, *Panini S.P.A. v. Burroughs, Inc.*, 2013 U.S. Dist. LEXIS 105930, at *24 (S.D. Ohio July 29, 2013) (upholding claim for misappropriation of confidential information because, "while Panini does not specify the exact confidential information that was allegedly used, Panini does plead the nature and character of the confidential information that was allegedly used. This is enough to afford Burroughs fair notice of Panini's claim and the grounds upon which it rests.").

Finally, Defendants argue that the information referenced in the PSAC is not protectable since it has been made public by virtue of CLI's own marketing efforts. This argument plainly fails with respect to CLI's login information, which surely was not made public by CLI. As to the balance of the confidential information discussed above, the Court concurs with CLI that such information's value lies in the methodologies used by CLI to produce its final products, not those products themselves. The fact that a logo, for example, is made public, does not render public and non-protectable the underlying processes that created it. *Cf. Sun Dial Corp. v. Rideout*, 16 N.J. 252, 257-58 (1954) ("[T]he fact that every ingredient is known to the industry is not controlling for the secret may consist of the method of combining them which produces a product superior to that of competitors.") (citing *Stone v. Grasselli Chemical Co.*, 65 N.J. Eq. 756, 760 (E. & A. 1903)).

In summary, the Court concludes that CLI (i) has pled a colorable claim for misappropriation for trade secrets as to Defendants' alleged taking of CLI's login information; (ii) has not done so with respect to any other information referenced in the PSAC; but (iii) has sufficiently alleged misappropriation of confidential information with regard to the other

categories of information referenced in paragraph 10 of the PSAC. The Court will therefore permit CLI to plead its first claim as stated in the PSAC, with the caveat that the claim shall be labeled as one for "Misappropriation of Trade Secrets and/or Confidential Information."

### b. Intentional Interference with Prospective Economic Advantage[8]

#### 1. *Prima Facie* Claim

A claim for intentional interference with prospective economic advantage must allege "(1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference." *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 563 A.2d 31, 37 (1989); Restatement (2d) of Torts § 766B).[9] Defendants argue that CLI fails to allege the first enumerated element.[10]

---

[8] As noted, the original complaint brought a claim for tortious interference with prospective economic advantage. That claim has been scrapped in favor of one sounding instead in "intentional interference," a term used interchangeably with tortious interference and entailing the same elements. *See Warren v. Fisher*, 2011 U.S. Dist. LEXIS 103456, at *18 (D.N.J. Sep. 12, 2011) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 744, 563 A.2d 31 (1989)).

[9] Some courts have since synthesized this test into one requiring a plaintiff "to show [1] that it had a reasonable expectation of economic advantage, [2] which was lost as a direct result of [a defendant's] malicious interference, and [3] that it suffered losses thereby." *See, e.g.*, *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 and n.26 (3d Cir. 2016) (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140 (N.J. Super. Ct. App. Div. 1995); referring to *Fineman*'s "earlier pars[ing] of] New Jersey law").

[10] Although this is the only futility argument raised by Defendants, "the Court exercises its inherent authority to review Plaintiff's proposed amendments for futility." *Werner Deconstruction, LLC v. Siteworks Servs. Ny, Inc.*, 2018 U.S. Dist. LEXIS 248195, at *4 (D.N.J. Dec. 6, 2018) (citing *Worster-Sims v. Tropicana Entm't, Inc.*, 46 F.Supp.3d 513, 517 (D.N.J. 2014) for proposition that "courts have inherent authority to dismiss claims *sua sponte* for failure to state [a] claim").

The crux of CLI's proposed claim is that Defendants' alleged interference with CLI's online platforms and taking of its information disrupted CLI's relationship with a "business partner[]" known as Stuller.com ("Stuller"), "since Defendants' conduct deprived CLI of the use of its social media pages and internet websites and the Confidential Information content thereon to brand, market, advertise, and promote, Stuller.com's jewelry." CLI alleges both that it has, "in the past", purchased jewelry from Stuller; and that upon Defendants' termination of the Agreement, it "entered into proposed contractual relations with Stuller.com to brand, market advertise, promote Stuller.com jewelry products under the 'Amore Jewelry design' brand name." CLI also alleges that Defendants interfered with its relationships with "existing viewers and prospective purchasers". *See* PSAC at ¶¶ 72-75 (cleaned up).

This claim thus appears to proceed on the dual theory that Defendants interfered with CLI's relationships with Stuller and prospective customers. The former fails as futile. First, CLI makes no allegation, nor can it be inferred, that Defendants had any "knowledge of th[e] expectancy" of an economic advantage arising from the CLI-Stuller relationship. *See Fineman*, *supra*. Somewhat more generally, the gist of this claim seems to allege conduct falling outside that targeted by the law. "[T]ortious interference with contractual relations requires a 'luring away, by devious, improper and unrighteous means, of the customer of another'". *Fox v. Goz (In re Target Indus.)*, 386 F. App'x 233, 237 (3d Cir. 2010) (quoting *Printing Mart*, 116 N.J. 739, 563 A.2d at 36); *see also Sterling Nat'l Mortg. Co. v. Mortg. Corner*, 97 F.3d 39, 42 (3d Cir. 1996) (describing such "luring away" as the "gravamen of a tortious interference claim"). CLI's allegations more accurately address actions taken by Defendants that, perhaps incidentally, resulted in a disruption of CLI's business prospects with Stuller, with no discernable benefit to

11

Defendants. As this is not the type of conduct the tort is geared toward preventing, the Court will not permit it to serve as the basis for CLI's claim.[11]

This still leaves, however, the prospect of liability based upon the relationship between CLI and its "existing viewers and prospective purchasers". Perhaps just barely, CLI alleges enough to sustain this theory, a conclusion owing more to courts' solicitousness in measuring such claims than the robustness of CLI's allegations. As noted in *Printing Mart*, "[w]ithout searching far, courts have succeeded in finding a reasonable expectation of economic benefit. . . . [C]ases also found a reasonable expectation of economic gain in as slight an interest as prospective public sales." 116 N.J. at 753-54 (citing cases). The Third Circuit has elucidated that

> such prospective relations include "the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts." . . . Protectable economic expectations can arise from both existing and potential customers. . . . Satisfaction of the first element does not turn on whether the customer is characterized as current or prospective, but rather whether the facts of the case "give rise to some reasonable expectation of economic advantage."

*Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (quoting *Printing-Mart*, 116 N.J. at 751, 755) (cleaned up); *see also Blueprint Capital Advisors, LLC v. Murphy*, 2022 U.S. Dist. LEXIS 231262, at *128 (D.N.J. Dec. 23, 2022) (**Neals, J.**) (upholding tortious interference claim where defendants were alleged to have misappropriated proprietary investment model; observing that "prospective relations include 'the opportunity . . . leading to

---

[11] The timeline alleged in the PSAC bolsters this conclusion. As noted, CLI alleges that it entered a prospective business arrangement with Stuller *after* Defendants terminated the Agreement. CLI likewise alleges that Defendants' "sudden[] terminat[ion]" of the Agreement and their interference with CLI's websites all occurred on the same day. *See* PSAC at ¶¶ 29-33. While it is perhaps possible that Defendants terminated the Agreement, followed by CLI and Stuller confirming a business arrangement, followed by Defendants taking control of CLI's websites all on *the same day*, this chronology strikes the Court as falling somewhat shy of a reasonable inference. It seems far more likely that at the time of the events alleged in the PSAC, CLI enjoyed no protectable economic benefit or advantage vis-à-vis Stuller.

potentially profitable contracts'") (quoting *Avaya Inc.*, 838 F.3d at 382); *Telebrands Corp. v. Ragner Tech. Corp.*, 2019 U.S. Dist. LEXIS 57247, at *18 (D.N.J. Apr. 3, 2019) (rejecting argument based on "Defendants' failure to identify a specific, interfered-with transaction" in light of *Avaya Inc.*).[12]

With this standard in mind, the facts of this case permit the inference that CLI's intellectual property enabled it to sell products to the public, and that Defendants' alleged actions interfered with it doing so. In this instance (unlike with Stuller), "the luring away, by devious, improper and unrighteous means, of the customer of another" appears to squarely reflect Defendants' alleged *modus operandi*. The Court thus concludes that the PSAC's sufficiently alleges an intentional interference claim with respect to Defendants' alleged interference with CLI's existing and prospective customers.

### 2. Economic Loss Doctrine

Defendants also raise an argument based in the economic loss doctrine. This rule "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract". *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Therefore, "whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC,* 646 F. Supp. 2d 668, 676 (D.N.J. 2009) (citing *Capital Plus Equity, LLC v. Prismatic Development Corp.*, 2008 U.S. Dist. LEXIS 54054, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008)); in other words, "to maintain a separate [tort]

---

[12] It is concededly difficult to square this authority with that stating that "[t]he claimed loss of . . . unknown customers cannot, standing alone, state a claim for tortious interference with prospective business relations." *Harmon v. Borough of Belmar*, 2018 U.S. Dist. LEXIS 197591, at *24 (D.N.J. Nov. 20, 2018) (quoting *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998)). The Court will follow the plaintiff-friendly framework provided by the leading decision in *Printing Mart*.

claim, [a plaintiff] must allege conduct that is 'extraneous to the contract.'" *SAT Agiyar, LLC v. 7-Eleven, Inc.*, 2021 U.S. Dist. LEXIS 217003, at *24 (D.N.J. Nov. 8, 2021) (quoting *Heyman v. Citimortgage, Inc.*, 2019 U.S. Dist. LEXIS 128238, 2019 WL 2642655, at *29 (D.N.J. June 27, 2019)); *see also Touristic Enters. Co. v. Trane, Inc.*, 2009 U.S. Dist. LEXIS 106145 (D.N.J. Nov. 13, 2009), at *6 ("Claims intrinsic to the contract are based solely on the failure to perform."). Defendants thus argue that CLI's intentional interference claim (as well as that for conversion)[13] fails because the Agreement provides that "CLI reserves all rights to all advertising and marketing intellectual properties", and CLI's claims are premised upon Defendants' alleged taking of such property.

  Defendants' argument fails. As noted, tort claims are barred where entitlement thereto "flows *only* from a contract". *Duquesne Light*, *supra* (emphasis added). That is — a tort claim is barred where the alleged actions underlying it would not amount to a tort if not for the parties' agreement. But if a contract provides, for example, that the parties will not steal from one another, the doctrine will not apply in the case of theft, since the victim would enjoy the right not to be stolen from even absent the contractual provision.

  This is precisely the situation here. While the Agreement does ensure that CLI retains its rights to its intellectual property, assuming the PSAC's allegations to be true, this would be the case even if the Agreement did not say so. CLI's enjoyment of its right to its own property does not flow from Defendants' alleged failure to perform under the Agreement, and certainly not "solely" therefrom. Instead, such right is extraneous to the contract and therefore can provide the basis for a tort cause of action despite a parallel claim for breach of contract.

---

[13] The economic loss doctrine applies to bar claims sounding in intentional interference as well as conversion, as to which Defendants raise the same argument. *See, e.g.*, *SAT Agiyar*, 2021 U.S. Dist. LEXIS 217003, at *24 (applying doctrine to tortious interference and conversion claims).

For the reasons stated, the Court will permit CLI to plead its proposed claim for intentional interference with prospective economic relations.[14]

c. **Conversion**

Defendants oppose CLI's proposed conversion claim on the ground that such claims pertain only to tangible property, which is not alleged to have been converted here.[15] Defendants are correct on this point. It is settled that "the tort of conversion may be applied only to interference with tangible property, and courts have consistently held that intangible property cannot be the subject of such a claim." *O'Brien Oil Pollution Serv., Inc. v. Kapoor*, 2009 U.S. Dist. LEXIS 67656, at *4-5 (D.N.J. Aug. 4, 2009) (citing *Slim CD, Inc. v. Heartland Payment Sys.*, 2007 U.S. Dist. LEXIS 62536, 2007 WL 2459349, *12 (D.N.J. Aug. 24, 2007)). The proprietary information allegedly converted here is precisely of the sort routinely categorized as intangible and therefore incapable of sustaining a conversion claim. *See, e.g.*, *O'Brien Oil Pollution*, 2009 U.S. Dist. LEXIS 67656, at *5 ("Here, Plaintiff argues that Defendants wrongfully retained and used OOPS's 'confidential / proprietary business information' without consent. Because confidential and proprietary business information is not tangible property, however, Plaintiff's claim is not viable.") (citing *K-Tronik N.A., Inc. v. Vossloh-Schwabe Matsushita*, 2006 U.S. Dist. LEXIS 28265, 2006 WL 1281291, at *3 (D.N.J. May 8, 2006)); *cf. Slim CD, Inc.*, 2007 U.S. Dist. LEXIS 62536, at *35 (dismissing conversion claim because "Defendant has not alleged that any tangible property was converted; instead, the only property at issue here is intangible customer transaction data transmitted via computer"). Indeed, the case

---

[14] Defendants' opposition argument premised upon variances between Defendants' use of "Amore Jewelry Design" and "Amore Fine Jewelry" presents a factual question unripe for consideration on the present motion.

[15] As noted, Defendants also bring an economic loss doctrine argument here, which fails for the reasons stated above.

15

cited by CLI on reply, *SCS Healthcare Mktg., LLC v. Allergan USA, Inc.*, 2012 N.J. Super. Unpub. LEXIS 2704 (Bergen Cty. Super. Ct. 2012), dismissed the conversion claim premised upon "intangible property such as trade secrets" because "no conversion of any of plaintiff's tangible property appears to be pleaded in its Complaint." *See id.* at *20-21. CLI's proposed conversion claim thus fails as futile.

### d. Injunctive and Other Relief

Finally, CLI seeks to include requests for "injunctive relief, double damages, exemplary damages, punitive damages, attorney's fees and costs of suit and expert witnesses." *See* ECF No. 10 at 2-3. Much of this relief is already demanded in the original amended complaint or is subsumed by the relief sought therein. *See* ECF No. 1-1, WHEREFORE clauses (demanding, *inter alia*, attorney's fees, punitive damages, costs of suit, and treble damages). To the extent CLI wishes to restate these demands, and without objection from Defendants, the Court will permit it to do so.

CLI's proposed requests for injunctive relief seek "a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, and each of them, from using CLI's Confidential Information, trade secrets, intellectual property, or content, on CLI's social media pages and internet websites"; and an order directing Defendants to cease certain activities and to return the property they are alleged to have taken. *See* PSAC, WHEREFORE clauses at 13-14; 20-21.[16] Defendants object on two grounds: that injunctive relief is unwarranted because any harm caused by Defendants' alleged actions has already been

---

[16] It bears noting that the original complaint likewise includes a passing request for injunctive relief; *i.e.* "[e]njoining Defendants from continuing to use Plaintiff's original and unique literary and art and marketing strategies content". *See* ECF No. 1-1 at 12. As indicated, the PSAC requests more robust injunctive relief than this.

done by virtue of CLI's information being made public; and that CLI's alleged damages are not irreparable because they can be redressed by monetary relief.[17]

The Court rejects Defendants' arguments. Initially, "[c]ourts are generally reticent to dismiss requests for injunctive relief at the pleading stage and have held that '[a] claim for permanent injunction should not be stricken at the pleading stage when the underlying claim is not dismissed.'" *Signify N. Am. Corp. v. Robe Lighting*, 2021 U.S. Dist. LEXIS 193704, at *5-6 (S.D. Fla. Mar. 16, 2021) (quoting *Oxygenator Water Techs., Inc. v. Tennant Co.*, 2020 U.S. Dist. LEXIS 141610, 2020 WL 4572062, at *6 (D. Minn. Aug. 7, 2020)). CLI's requests for injunctive relief accompany its proposed trade secrets and intentional interference claims, both of which the Court is permitting to proceed.

As to substance, Defendants' "cat is out of the bag" argument fails for two reasons. First, it has no bearing on CLI's intentional interference claim; only that for misappropriation of trade secrets. Second and as noted above, the alleged publication of CLI's online marketing products does not mean that the processes underlying those materials have been made public as well.

The monetary relief argument is likewise without merit. CLI alleges that absent injunctive relief, it will continue to suffer harm to its "reputation, goodwill, and ability to service new business partners." PSAC at ¶ 80; *see also id.* at ¶ 42 (as a result of Defendants' alleged actions, "all views and traffic and communications from viewers from December 28, 2021 onward, are being forwarded to 'Diamond Phil's' and Phillip Grosso's email address and no viewers are able to contact 'CLI' from the website"). These are well-recognized forms of irreparable harm. *See, e.g.*, *Freedom Funding Grp., Inc. v. Freedom Funding Grp. L.L.C.*, 2022

---

[17] Injunctive relief requires, *inter alia*, "that [the party seeking an injunction] will suffer irreparable harm if the injunction is denied". *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "The availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1989).

U.S. Dist. LEXIS 152999, at *60 (D.N.J. Aug. 25, 2022) ("The Court finds that Plaintiff has suffered irreparable injury. Not only has Plaintiff's trade secrets been compromised, but Defendants have interfered with Plaintiff's business relationships. In addition, Defendant Gordon used Plaintiff's service mark and created a website in an attempt to divert Plaintiff's clients to his newly formed company. The Court agrees with Plaintiff that monetary damages is an inadequate remedy for Plaintiff's harm to its reputation, business, and client relationships.") (citation omitted); *Saturn Wireless Consulting, LLC v. Aversa*, 2017 U.S. Dist. LEXIS 65371, at *49 (D.N.J. Apr. 26, 2017) ("New Jersey courts recognize that 'the diversion of a company's customers may [] constitute irreparable harm, [and that] [t]his is so because the extent of the injury to the business as a result of this type of conduct cannot be readily ascertained, and as such, does not lend itself to a straightforward calculation of money damages.'") (quoting *Fluoramics, Inc. v. Trueba*, 2005 WL 3455185, at *8 (N.J. Ch. Div. Dec. 16, 2005)); *Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998) ("Generally, the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships may be the basis for a finding of irreparable harm.") (citing cases).

Finding Defendants' objections without merit, the Court will permit CLI's proposed amended demands for injunctive relief.

## V.     Conclusion

An appropriate Order follows.

Dated: February 8, 2023

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.
